# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL DELKER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09-710 |
| ) | |
| v. ) | Magistrate Judge Bissoon |
| ) | |
| CORRECTIONS OFFICER BLAKER, ) | |
| *et al.*, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons that follow, the motion for summary judgment filed by Defendants Blaker, King, and Pluck (Doc. 54) will be granted in part and denied in part.

Daniel Delker ("Plaintiff") is a state prisoner currently incarcerated at the State Correctional Institution at Fayette ("SCI-Fayette"), located in LaBelle, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging deprivations of his rights under the Eighth Amendment to the Constitution of the United States, stemming from events that took place during his transfer from the State Correctional Institution at Somerset ("SCI-Somerset") to the State Correctional Institution at Greene ("SCI-Greene") in Waynesburg, Pennsylvania. Second Am. Compl. (Doc. 35) ¶¶ 1, 10. This suit commenced with this Court's receipt of the initial complaint on June 3, 2009. (Doc. 1). Plaintiff consented to the jurisdiction of a magistrate judge on May 4, 2010. (Doc. 36). Defendants consented to the same on September 10, 2009 (Doc. 11), and June 16, 2010 (Doc. 41).

1

Defendants Blaker, King, and Pluck filed a motion for summary judgment (Doc. 54) on November 26, 2010. Plaintiff filed a response to this motion on January 14, 2011 (Doc. 64). This motion is ripe for disposition.

### A. Relevant Factual History

On June 28, 2008, Plaintiff was being transported from SCI-Somerset to SCI-Greene on a prison bus with other inmates and corrections staff. (Doc. 65) ¶ I.7. During the course of this transportation, Plaintiff was acting in an unruly manner – verbally insulting other inmates and guards on the bus, using racial epithets, and threatening to urinate and spit on his fellow passengers. Id. ¶ I.10. Plaintiff was held in a cage on the bus that separated him from its other passengers, and was restrained with handcuffs, a waist belt, leg shackles, a black box, and a spit hood. Id. ¶¶ I.11, III.1. During the roughly two-hour drive from SCI-Somerset to SCI-Greene, Defendant King was seated behind Plaintiff's cage. Id. ¶ II.11.

As a result of Plaintiff's behavior, Lieutenant Daryl Eperjesi[1] ("Eperjesi") was instructed by the shift commander at SCI-Greene to assemble a crew of corrections officers to remove Plaintiff from the bus when it arrived, and process him into the Restricted Housing Unit ("RHU"). Id. ¶¶ I.8 – I.9.

When the transport arrived at SCI-Greene, all inmates save Plaintiff were removed from the bus and placed in a holding cell in the prison's intake area. Id. ¶ I.13. At some point prior to attempts being made to remove Plaintiff from the bus, Defendant King encountered Defendant Grainey, who is the highest-ranking uniformed corrections officer at the institution, outside of

---

[1] Eperjesi, while initially named as a Defendant to this suit, was dismissed on May 3, 2010, when Plaintiff filed the second amended complaint. (Doc. 35).

2

the intake area.  Id. ¶¶ I.6, I.12.  Both Defendant Grainey and Plaintiff agree that Defendant Grainey "was on a walk through the facility, [and] had gone outside briefly . . . to smoke a cigarette."  Id. ¶ II.5.  It is undisputed that Defendant King informed Defendant Grainey of the problems that he had experienced regarding Plaintiff's disruptive behavior during the trip.  Id. ¶¶ I.12, II.8, (Doc. 65-1) at 108.  Defendants King, Blaker, and Pluck, as well as Plaintiff, assert that during the conversation, Defendant Grainey ordered Defendant King "to do his job" and, if Plaintiff got out of hand, to give him "a good SCI-Greene welcome."  Id.  Defendant Grainey denies that any such statement was made, or that any such order was given by him.  Id. ¶¶ II.7 – II.8.  It is undisputed that Defendant Grainey left the area prior to Plaintiff's removal from the bus.  Id. ¶ III.10.

Defendants King, Blaker, and Pluck were chosen as the team to remove Plaintiff from the bus.  Id. ¶ I.13.  Adrian Fauvie ("Fauvie"), a non-party corrections officer who was directed to assist in removing Plaintiff from the bus, followed these individuals with a video camera, under orders from Eperjesi to record the encounter.  Id. ¶ I.14.  Eperjesi was present for the removal, and was outside the back of the bus.  Id.

Defendant King stood directly outside of the cage door, which was located on the "passenger side" of the bus.[2]  Id. ¶ 16.  Defendant Pluck positioned himself behind Defendant King, on the "driver's side" of the bus.  Id.  Defendant Blaker stood in the walkway at the back of the bus, facing Defendant King.  Id.  Defendant King asserts that, after opening the cage door, he reached in to take Plaintiff's arms and move him out.  Id. ¶ I.17.  Plaintiff then lunged forward, and Defendant King grabbed Plaintiff's jumpsuit and pushed him against the side of the

---

[2] The "passenger side" refers to the right half of the bus when viewed from the frame of reference of anyone entering the bus from its rear door.

3

cage in order to reassert control.  Id.  Before control could be regained, however, Plaintiff lunged again.  Id.  Defendants King, Blaker, and Pluck then recount how it appeared to Fauvie that Plaintiff was going to head-butt Defendant King – although he did not actually head-butt him.  Id. ¶ I.18.  These Defendants claim that "Plaintiff's weight, momentum and position of balance, combined with [Defendant] King's and [Defendant] Blaker's weight, caused Plaintiff to go to the ground.  [Defendant] King and [Defendant] Blaker then regained physical control of him."  Id. ¶ I.19.  Defendant King admits that, during the course of the altercation, he struck Plaintiff with his hand three times – once in the face when restraining him against the cage, once in the chest before Plaintiff fell to the floor of the bus, and once more while Plaintiff was on the floor.  Id. ¶ I.20.  However, Defendant King argues that this was done only in self-defense, or in the defense of other officers.  Id.

Plaintiff's recollection of these events differs significantly.  Plaintiff asserts that, as he was being removed from the cage, he was not being physically aggressive, and underscores the fact that he was in full restraints.  Id. ¶ I.18.  Plaintiff also points to Fauvie's deposition testimony, in which Fauvie states that prior statements regarding Plaintiff's alleged attempts to head-butt Defendant King were made under duress.  Id.; (Doc. 65-1) at 68 – 70.  Indeed, Fauvie testified at his deposition that he did not believe that Plaintiff had attempted to head-butt Defendant King, and characterized the use of force that took place that day in the following manner: "[t]hat was not unplanned use of force.  That was [Defendant King's] use of force."  (Doc. 65) ¶ I.18; (Doc. 65-1) at 75 – 76.

Plaintiff further asserts that, during the use of force, he turned to try to "fend off the blows" that he was receiving, and was pushed to the floor by Defendant King.  (Doc. 65) ¶ I.19.  While he was on the floor, Defendant King punched Plaintiff in or around his face with a closed

4

fist, and both Defendants King and Blaker continued to punch him while he was down. Id. Plaintiff further alleges that Eperjesi saw Defendant King take Plaintiff to the ground and punch him with a closed fist in his face. Id. ¶ I.22. Plaintiff does not allege that Pluck was involved in the use of force directly, but instead claims that he failed to intervene in and stop Defendants King and Blaker's alleged misuse of force. Id. ¶ I.27.

After the use of force, Defendants King and Blacker lifted Plaintiff to his feet and escorted him off the bus and into the intake area. Id. ¶ I.23.

Fauvie had been ordered to film the removal team's encounter with Plaintiff. Parties agree that filming began at 19:14:36 hours.[3] Id. ¶ 24. Recording suddenly stops at 19:15:10, and starts again at 19:15:55, as Plaintiff is walking down the steps leading out of the bus. The portion of the incident that Fauvie did film begins as Defendants King, Blaker, and Pluck are moving into position to remove Plaintiff from the cage. Plaintiff begins asking a question about a lieutenant (presumably Eperjesi), but the majority of his query is inaudible, and he is not answered by the corrections officers. As the door to the cage is unlocked, Plaintiff rises from his seat. Once the door is opened, Plaintiff slowly shuffles out of the cage. Two corrections officers grasp Plaintiffs upper arms. At 19:14:57 Plaintiff utters "ahh, okay," and is roughly shoved into

---

[3] The timestamp on the video is not in military time. However, in order to remain consistent with the parties' filings, this Court will report all times in military time.

The recording filed with this Court under seal begins at 19:14:42. The video was filed under seal pursuant to a confidentiality agreement between Plaintiff and the Department of Corrections ("DOC"). (Doc. 63-1). The rationale for the agreement was based on the DOC's policy "not to disseminate video records which reveal the inside/layout of its state correctional institutions . . . ." Id. at 2. Given that the below description of the contents of the video does not extend to the portions of the video that show the inside of SCI-Greene, and the subject matter is discussed in great detail in filings in this case that are available to the public, this Court will not file this opinion, or any portion thereof, under seal.

the open cage door.  Plaintiff and the door both loudly collide with the outer wall of the cage.  The view of the incident is partially obscured by the bodies of the guards and the angle at which the camera is held.  However, the recording does show that both Defendants King and Blaker had their hands on Plaintiff.  It also does not show any apparent aggressive behavior on the part of Plaintiff that would justify his initial rough treatment, nor does it show that Plaintiff was given any orders by the officers, either prior to the use of force, or after its initiation.

At this point, a brief verbal exchange takes place between Plaintiff and Defendants Blaker and King.  Plaintiff, in a soft voice, makes a partially inaudible statement ending in ". . . what you're supposed to do."  One of the officers responds, "Exactly . . . [*inaudible*] . . . exactly what the fuck I'm supposed to do."  As this verbal exchange occurs, the camera angle lowers, and Plaintiff is almost entirely obscured by the body of one of the Defendants.  The dialogue continues regarding Plaintiff's glasses,[4] and lasts until 19:15:10, when the video abruptly cuts to 19:15:55, at which point Plaintiff is being taken off of the bus.

Plaintiff was examined by medical personal on the day of the incident.  It is undisputed that Plaintiff suffered abrasions on his upper forehead and left side of his nose, as well as a three-centimeter long laceration inside his lip.  (Doc. 65) ¶ 30.  Plaintiff notes that the medical records also show that he suffered a contusion to the posterior left occipital area of his head, and injuries to his shin and right ribcage.  Id.  Plaintiff suffered no fractures to his skull or facial bones.  Id. ¶ 34.

---

[4] It is undisputed that Plaintiff's glasses were broken while he was on the bus.  However, SCI-Greene paid to replace them.  (Doc. 65) ¶ 26.

B. <u>Analysis</u>

1. **<u>Eighth Amendment</u>**

The Eighth Amendment protects prisoners against cruel and unusual punishment, but it does not protect an inmate against every minimal use of force. <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002). Force is deemed legitimate in a custodial setting so long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986) (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)). A variety of factors are considered to determine if an application of force was applied maliciously and sadistically. These include: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). The extent of any injuries that an inmate suffers is relevant, but "does not end" this analysis. <u>Id.</u> Consideration of these factors permit a court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." <u>Whitley</u>, 475 U.S. at 321 (quoting <u>Johnson</u>, 481 F.2d at 1033). "Summary judgment in favor of a defendant is not appropriate if 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (citing <u>Whitley</u>, 475 U.S. at 322).

Defendants King, Blaker, and Pluck make several arguments in support of their motion for summary judgment (Doc. 55). These will be addressed *seriatim*.

a. Use of Force by Defendants King and Blaker

Defendants King, Blaker, and Pluck argue that Plaintiff has not adduced sufficient evidence to allow a reasonable trier of fact to conclude that they violated Plaintiff's rights under the Eighth Amendment during the incident on June 28, 2008. Id. at 3. This is belied by the deposition testimony provided by several of the witnesses to the event. See (Doc. 65-1) at 75 – 76 (in which Fauvie states "[t]hat was not unplanned use of force. That was [Defendant King's] use of force;" see also id. at 5,12-15 (in which Eperjesi described what he saw of the incident, including that Defendant King struck Plaintiff); see, also id at 53 - 54 (in which Plaintiff states that Defendants King and Blaker each hit him at least six times, and that "I [Plaintiff] didn't resist. I didn't make no moves, I didn't do nothing. They just beat my ass. And good, too"). Additionally the video taken of the incident – such as it is – would allow a reasonable trier of fact to conclude that Defendants King and Blaker engaged in an unjustified use of force against Plaintiff.

The evidence on the record creates genuine issue of fact with respect to (1) the need for use of force by Defendants King and Blaker; (2) relationship between the need for force and the amount used; and (3) the threat Defendants reasonably perceived. Additionally, while Defendants argued that they tempered their response by not using weapons, (Doc. 55) at 13, they testified in their depositions that they did not have any weapons in their possession at the time of the incident. (Doc. 65-1) at 37, 97. The record indicates that Plaintiff suffered multiple injuries during the use of force – although none rose to the level of a fractured bone. (Doc. 65) ¶¶ 30 – 34; (Doc. 65-1) at 80 – 83.

Given the evidence on the record, and the clear material issues of fact that exist, summary judgment will be denied to Defendants King and Blaker on this claim. See Fed.R.Civ.P. 56.

8

(stating that summary judgment is appropriate only if the record indicates that ". . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")

### b. Failure to Intervene by Defendants Blaker and Pluck

The Court of Appeals for the Third Circuit has recognized that the failure of a corrections officer to intervene in certain acts, such as an unjustified use of force, "can be the basis of liability for an Eighth Amendment violation under § 1983 . . . ." Smith, 293 F.3d at 650. That court went on further to state that

> [t]he approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force. It is incompatible with the restrictions imposed under the Eighth Amendment, and is therefore unacceptable. We will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation and escape responsibility for it. The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs.

Id. at 651. Consequently, the failure or refusal to intervene in another officer's assault on an inmate will create direct liability for the non-intervening officer who did not physically participate in an excessive use of force. Id. at 650 – 51.

However, in order for liability to attach under section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her

9

knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." Smith, 293 F.3d at 651; see also McCullough v. Miller, No. 06-514, 2008 WL 4361254, at *9 (W.D.Pa. Sept. 24, 2008) (Lancaster, J.). In determining whether an opportunity to intervene existed, courts take into account many factors, "including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, *etc*." McCullough, 2008 WL 4361254, at *9 (citing Swinyer v. Cole, No. C04-5348, 2006 WL 1874100, at *3 (W.D.Wash. July 6, 2006); Mitchell v. James, No. 4:04CV1068, 2006 WL 212214, at *5 (E.D.Mo. Jan. 27, 2006)).

Based on the analysis in Part B.1.a. of this memorandum, *supra*, it is clear that a triable issue of fact exists regarding Plaintiff's exposure to unconstitutionally excessive force during his removal from the prison bus. Additionally, there is no dispute that the use of force occurred in the presence of both Defendants Blaker and Pluck.[5] Thus, in order to determine whether summary judgment is appropriate, we must determine whether an issue of fact exists with respect to these Defendants' ability to intervene in the use of force.

In this case, the video shows that both Defendants Blaker and Pluck were on the bus prior to the initiation of force. The video further shows that, as force is initiated, Defendant Pluck is positioned in a seat adjacent to where Defendant Blaker was standing, and while it appears that there was no impediment to his ability to reach Defendant Blaker physically, his ability to reach Defendant King clearly was restricted.

Evidence in Defendant Pluck's favor is the extreme brevity of the alleged assault. According to the video, the conduct at issue occurred in about 55 seconds, at most. Moreover, it

---

[5] Indeed, the record contains a significant amount of evidence that Blaker himself engaged in the use of force against Plaintiff.

is clear from the record that the cramped conditions on the bus provided Defendant Pluck with little opportunity to maneuver, even if he had been willing intervene. Additionally, there is no evidence on the record that Defendant Pluck had any reason to expect that the use of force would occur until after it had happened. See Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996). Even if he were able to reach Defendants King and Blaker, it is unclear how he could physically restrain these two Defendants, as well as maintain control over Plaintiff – a state inmate and convicted murderer of a corrections officer. See (Doc. 58) at 9.

Given the short amount of time within which the incident occurred, and the cramped conditions of the bus, this Court concludes that no reasonable trier of fact could find that Defendant Pluck had a realistic and reasonable opportunity to intervene in Plaintiff's alleged assault. Thus, summary judgment will be granted in favor of Defendant Pluck.

Defendant Blaker faced the same issues with respect to cramped conditions on the bus and the brevity of events. The record indicates that Plaintiff's body was between Defendants Blaker and King – at least initially. A reasonable trier of fact, based on the record before this Court, could not conclude that Defendant Blaker had a realistic and reasonable opportunity to intervene in Defendant King's alleged use of force. Accordingly, summary judgment will be granted in his favor on this claim.[6]

### 2. Qualified Immunity

Qualified immunity is governed by Saucier v. Katz, in which the Supreme Court held that a court must consider (1) whether the facts "show that the officer's conduct violated a

---

[6] This, of course, does not affect Plaintiff's claims that Defendant Blaker directly used excessive force against him.

constitutional right[;]" and then (2) "is a violation could be made out . . . the next, sequential step is to ask whether the right was clearly established."[7]  533 U.S. 194, 201 (2001).

Although qualified immunity generally is a question of law that should be considered at the earliest possible stage, a genuine issue of fact may preclude the grant of summary judgment based on qualified immunity.  Giles v. Kearney, 571 F.3d 318, 325 (3d Cir. 2009); see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir 2002) ("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis").

For the reasons stated in Part B.1.a. of this memorandum opinion, *supra*, it is clear that a triable issue of fact exists as to whether Defendants Blaker and King violated Plaintiff's right to be free of cruel and unusual punishment under the Eighth Amendment.  Thus, it is necessary to determine whether that right was clearly established as of June 28, 2008.

As Plaintiff correctly argues, the right to be free from the use of excessive force has been established for years.  (Doc. 64) at 15 – 16.  Indeed, Defendants, in their own brief in support of summary judgment, cite to Hudson, 503 U.S. 1 (1992), in which the Supreme Court held that the excessive use of physical force against a prisoner may constitute cruel and unusual punishment in violation of the Eighth Amendment.  Id. at 4.  That case referenced Whitley, an older case in which the Court held that "the unnecessary and wanton infliction of pain . . . constitutes cruel

---

[7] The order of the Saucier analysis was relaxed somewhat by Pearson v. Callahan, in which the Court held that "[b]ecause the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." 555 U.S. 223, 230 (2009).  For reasons that are evident, the two-step Saucier procedure is the more helpful one in disposing of the qualified immunity defense currently before this Court.

12

and unusual punishment forbidden by the Eighth Amendment." 475 U.S. at 319 (internal citations and quotes omitted." The Court further stated

> Extending Whitley's application of the "unnecessary and wanton infliction of pain" standard to all allegations of excessive force works no innovation. This Court derived the Whitley test from one articulated by Judge Friendly in Johnson v. Glick, [481 F.2d 1028, 1033 (2d Cir 1973)], a case arising out of a prisoner's claim to have been beaten and harassed by a guard. Moreover, many Courts of Appeals already apply the Whitley standard to allegations of excessive force outside of the riot situation.

Hudson, 503 U.S. at 7 (citing cases). It is clear that the concept that a prison guard may not lawfully use force solely out of the sadistic motivation to cause harm, even if a plaintiff does not suffer extreme injuries as a result of the use of force, is well established in American law.

In response to the second prong of the Saucier analysis, Defendants provide only the conclusory statement that "no reasonable officer in Defendants' positions could have believed that it was unlawful to restrain Plaintiff, strike Plaintiff in an attempt to prevent a potential head-butt, and take Plaintiff to the ground to regain control and compliance." (Doc. 55) at 22. With respect to Defendants King and Blaker, this argument is unpersuasive for two reasons. First, the portions of the depositions of Eperjesi and Fauvie – both of whom are corrections officers – that are on the record serve as evidence from which a reasonable trier of fact could conclude that Defendants' use of force against Plaintiff was unjustified. See (Doc. 65-1) at 5, 12-15, 75 – 76. Second, for the reasons stated above, a triable issue of fact exists regarding the veracity of Defendants' characterization of the events of June 28, 2008. Accordingly, Defendants' motion for summary judgment based on qualified immunity will be denied.

### 3. Punitive Damages

Defendants argue that summary judgment should be granted in their favor on Plaintiff's claims for punitive damages. (Doc. 55) at 22. "[A] jury may 'assess punitive damages in a [civil rights action] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Alexander v. Riga, 208 F.3d 419, 430 – 31 (3d Cir. 2000) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Reckless or callous indifference has been held to rise to the same level of *scienter* as deliberate indifference in the context of an Eighth Amendment conditions of confinement claim. See Walker v. Brooks, 2009 WL 3183051, at *9 (W.D.Pa. Sept. 30, 2009) (Lenihan, Mag.J).

The evidence on the record shows a genuine issue of fact as to whether Defendants King and Blaker maliciously and sadistically, with the intent of causing harm, used excessive force on Plaintiff. Such a standard indicates intentional, or at least reckless, conduct on the part of these Defendants, designed to violate Plaintiff's right to be free of cruel and unusual punishment. As such, a reasonable juror could conclude that Defendants King and Blaker are liable for punitive damages, and summary judgment must be denied.

### 4. Section 1983 Conspiracy

Plaintiff asserts that Defendants King and Grainey entered into a conspiracy to use excessive force against him. (Doc. 35) ¶ 29. Section 1983 does not create a cause of action for conspiracy in and of itself. Instead, on order to prevail, a plaintiff also must show some underlying deprivation of a constitutional right. Davis v. Wilson, No. 08-589, 2009 WL 688912, at *12 (W.D.Pa. Mar 12, 2009) (Hay, Mag.J.) (quoting Holt Cargo Systems, Inc. v. Delaware River Port Auth., 20 F.Supp.2d 803, 843 (E.D.Pa. 1998)); see also Hickson v. Marina Assoc.s,

743 F.Supp.2d 362, 377 n.22 (D.N.J. 2010) ("[t]he theory of conspiracy does not yield an independent cause of action under Section 1983, but instead presents merely a means to impute liability to other wrongdoers for violations of federal rights" (citing Revak v. Leiberum, No. 08-691, 2009 WL 1099187, at *2 (W.D.Pa. Apr. 23, 2009) (Ambrose, C.J.)).

Based on the analysis above concerning Defendant King, a triable issue of fact exists as to whether he violated Plaintiff's rights under the Eighth Amendment by means of the use of excessive force. As such, any finding that a conspiracy existed between him and Defendant Grainey to engage in this allegedly excessive use of force would not affect Defendant King's liability with respect to this incident. Instead, a finding of conspiracy would serve only to extend liability for the alleged constitutional deprivation to Defendant Grainey. Given that Defendant Grainey has moved for summary judgment on Plaintiff's conspiracy claim (Doc. 60), this Court finds it advisable to defer addressing that issue until it rules on that motion.

AND NOW, this 30th day of June, 2011,

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendants Blaker, King, and Pluck (Doc. 54) is GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that summary judgment is GRANTED to Defendants Pluck and Blaker with respect to Plaintiff's failure to intervene claims. This disposes of all claims against Defendant Pluck.

IT IS FURTHER ORDERED that a ruling on Plaintiff's conspiracy claim is deferred.

IT IS FURTHER ORDERED that this motion is DENIED as to Plaintiff's claims that Defendants King and Blaker directly engaged in the excessive use of force, and in all other respects.

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES MAGISTRATE JUDGE