IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL DELKER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09-710 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| CORRECTIONS OFFICER BLAKER, ) | |
| *et al.*, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Daniel Delker ("Plaintiff") is a state prisoner currently incarcerated at the State Correctional Institution at Fayette ("SCI-Fayette"), located in LaBelle, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging deprivations of his rights under the Eighth Amendment to the Constitution of the United States stemming from events that took place during his transfer from the State Correctional Institution at Somerset ("SCI-Somerset") to the State Correctional Institution at Greene ("SCI-Greene") on June 24, 2008. Second Am. Compl. (Doc. 35 ¶¶ 1, 10). This suit commenced with this Court's receipt of the initial complaint on June 3, 2009. (Doc. 1). Several of Plaintiff's claims have survived dispositive motions, and a jury trial before the undersigned is scheduled to commence on April 16, 2012. (Doc. 84).

Before this Court are several motions *in limine* filed by the parties. They will be addressed *seriatim*.

1

A.  **Plaintiff's Motion to Exclude Criminal and Institutional History**

Plaintiff argues that evidence relating to his "criminal convictions, misconducts (except for documents related to A828169), and institutional history (specifically, the inmate query summary, his placement on the restricted release list, his status as an escape risk, and DOC Transfer Petition System documents)" should not be allowed at trial.[1]  (Doc. 87 at 1).  Plaintiff asserts that this evidence is irrelevant, and thus inadmissible under Federal Rule of Evidence 402, because it does not have any bearing on whether force was maliciously and sadistically applied by Defendants during the incident on June 24, 2008.  (Doc. 88 at 1-2).  Plaintiff interprets this evidence as being useful only to show that he has a propensity to act a certain way, which is impermissible under Rule 404.  (Doc. 88 at 3).  Plaintiff also argues that its admission at trial would be unfairly prejudicial.  Id. at 4 (citing Fed. R. Evid. 403).  Finally, citing Rules 404 and 609, Plaintiff asserts that evidence of his past criminal conviction and institutional history have no bearing on his credibility in this case, and thus are improper for the purposes of impeachment.  (Doc. 88 at 5).

In his response, Defendant Grainey concedes that this motion should be granted to the extent that it would not exclude evidence of Plaintiff's conduct on the transport bus on the date

---

[1] Plaintiff lists the following items specifically as the subject matter of this motion:

> all [Plaintiff's] criminal convictions and prior offenses, all misconducts excluding the misconduct written in relation to the incident that occurred on June 24, 2008, the Pennsylvania Department of Corrections "Inmate Query – Summary" docket for Plaintiff . . . dated June 24, 2008, Pennsylvania Department of Corrections "Misconducts" docket for Plaintiff . . . dated June 24, 2008, Pennsylvania Department of Corrections documentation of Plaintiff . . . as on restricted release list and status as an escape risk.

(Doc. 88 at 1 n.1) (alterations in original).

of the incident.[2] (Doc. 97 ¶ 1). Defendants Blaker and King, however, oppose excluding this evidence. These Defendants argue that Plaintiff's prior conviction is relevant and probative because it was for murdering a corrections officer, and his institutional history demonstrates Plaintiff's past violent and non-compliant behavior – which they assert is relevant to determining their state of mind during the use of force on Plaintiff. (Doc. 103 at 1-2). Defendants Blaker and King also posit that the danger of unfair prejudice can be reduced through the use of instructions to the jury.

Under the Eighth Amendment force is deemed legitimate in a custodial setting so long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Factors to be considered in determining whether an application of force was applied maliciously and sadistically. These include: "(1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of the injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 321).

Based on this standard, it is clear that Plaintiff's institutional history – which spans multiple decades – is not relevant to the events of June 24, 2008. The issue in this case is whether the use of force on the date in question was malicious and sadistic, based on the threat

---

[2] The undersigned does not interpret the instant motion to seek the exclusion of evidence relating to Plaintiff's conduct on the transport bus. Instead, that evidence appears to be the subject of another of Plaintiff's motions *in limine*, see (Doc. 91), which will be addressed in Part C of this order, infra.

reasonably perceived by Defendants Blaker and King at the time of its application.[3]  Defendants Blaker and King argue that they had knowledge of Plaintiff's history of disciplinary infractions, and this knowledge formed the basis for their state of mind during their use of force. (Doc. 103 at 3-4).  However, even if Defendants did have specific knowledge of Plaintiff's decades-old conviction and institutional history, such knowledge would not render allegations of their malicious intent more or less probable.  Plaintiff's conviction and institutional misconducts simply are too remote in time to the incident of June 24, 2008, to have any bearing on this case.  Accordingly, the admission of direct evidence relating to these things, "excluding the misconduct written in relation to the incident that occurred on June 24, 2008[,]" will not be allowed, pursuant to Rule 402.

Additionally, there is a significant risk that the admission of Plaintiff's prior criminal conviction would unfairly prejudice his case by arousing outright hostility from a jury.  As, Defendants Blaker and King properly state, Plaintiff's murder of a corrections officer 30 years ago is "horrendous[.]" (Doc. 103 at 4).  The probability that a jury would base its determination of this case on that act, instead of the merits of Plaintiff's claims, is significant.  Furthermore, it seems unlikely that jury instructions would limit that risk appreciably.  Moreover, as stated above, the probative value of Plaintiff's decades-old conviction is minimal due to its remoteness

---

[3] According to his prison misconduct record, prior to the incident of June 24, 2008, Plaintiff had last been disciplined on June 13, 2008, for refusing to obey an order. (Doc. 88-1 at 3).   This Court notes, with some sense of irony, that the video recording of the incident of June 24, 2008, demonstrates that, in the period of time immediately leading up to the use of force, Defendants Blaker and King gave no orders for Plaintiff to disobey.  See (Doc 71 at 5-6).

in time to the June 24, 2008 incident.  Accordingly, Rule 403 provides an alternative reason to exclude this evidence from trial.[4]

### B.  Plaintiff's Motion to Exclude Testimony and Exhibits on Defensive Tactics

Plaintiff next moves this Court to preclude Defendants from presenting evidence regarding their defensive tactics training.  (Doc. 89 at 1).  Plaintiff bases his objections on Rules 602, 701, 403, and 401.  (Doc. 90 at 2).    Defendants Blaker and King oppose this motion.  (Doc. 101).  Defendant Grainey explicitly takes no position.  (Doc. 97 ¶ 2).

Plaintiff argues first that the defensive tactics witnesses should be precluded from testifying because they have no personal knowledge of the events of June 24, 2008, and have not been identified as expert witnesses in Defendants Blaker and King's pretrial statement.  (Doc. 90 at 2-3).  Defendants Blaker and King concede that these witnesses have not been presented as experts, but argue, instead, that they would provide lay testimony regarding the training that Defendants Blaker and King received, of which they have personal knowledge.  (Doc. 101 at 3).

The defensive tactics training actually received by Defendants Blaker and King clearly is relevant to this case, as it implicates factors one, two, and four of the Whitley test.[5]  To the extent

---

[4] To the extent that Plaintiff wishes to preclude the admission of evidence of his institutional history for the purposes of impeachment, this Court notes that Defendants Blaker and King explicitly limit their prospective use of such evidence to circumstance in which "Plaintiff attempts to deny his past actions."  (Doc. 103 at 4).  It is unclear whether such circumstances will present themselves at trial.  As such, this Court will deny this aspect of Plaintiff first motion *in limine*, without prejudice to raising this argument again at trial, should circumstances warrant doing so.

[5] The same would be true of any exhibits regarding defensive training, provided that it could be established that the exhibits related to training that was actually received by Defendants Blaker and King.  This Court notes that Plaintiff complains that certain training materials identified by Defendants Blaker and King in their pretrial statement were not provided to them during (continued. . .)

5

that these witnesses have personal, particularized knowledge of the training that Defendants Blaker and King actually received – gained, for example, by taking part in a training program alongside these Defendants, or by teaching the same – their testimony regarding such knowledge would fall within the realm of lay testimony, and will not be excluded. Fed. R. Evid. 602.

However, the same cannot be said of any attempt to present testimony regarding DOC defensive tactics training in general. To the extent that Defendants intend to call these witnesses to present their specialized knowledge of this training, their testimony would be classic expert testimony under Rules 701 and 702. This is especially true to the extent that their testimony would be used to establish the standard of a "reasonably well-trained officer[]."[6] (Doc. 101 at 3). As they were not identified as experts, such testimony will not be allowed. See Fed. R. Civ. P. 26(a)(2).

Finally, Plaintiff argues that testimony and exhibits regarding Defendants Blaker and King's training in defensive tactics, elicited from sources other than the testimony of Defendants themselves, is a waste of time, unnecessarily cumulative, and would be confusing to a jury. (Doc. 90 at 5). Thus, they move for its preclusion under Rule 403. Id. at 4. As stated above, evidence of Defendants' defensive tactics training is relevant to the Whitley test. However, given the high number of potential witnesses that Defendants Blaker and King propose to call

---

discovery. (Doc. 90 at 2 n.1). Plaintiff does not seek their preclusion on this basis, however, and this Court will not do so *sua sponte*.

[6] In support of their argument, Defendants Blaker and King cite to Brown v. Culp, No. 1:CV-11-1734, 2011 WL 6003900 (M.D. Pa. Oct. 27, 2011) and Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004). These are cases involve claims of excessive force in the used in the context of the Fourth Amendment. The Fourth Amendment standard involves an objective test that is wholly inapplicable to the instant cause of action, which arises under the Eighth Amendment.

regarding this issue, this portion of Plaintiff's motion will be denied without prejudice to Plaintiff renewing his Rule 403 objections at trial, should circumstances warrant doing so.[7]

### C. Plaintiff's Motion to Exclude Testimony and Exhibits Pertaining to Plaintiff's Conduct during the Transport from SCI-Somerset to SCI-Greene

In this motion, Plaintiff requests that any evidence pertaining to his behavior during his transport from SCI-Somerset to SCI-Greene on June 24, 2008, be excluded from trial. (Doc. 94 at 1). Plaintiff argues that his conduct on the bus is irrelevant because it occurred prior to the use of force – which took place after the bus had reached its destination. Id. at 2. Plaintiff also argues that his conduct on the bus is unfairly prejudicial and confusing, and thus should be excluded on the basis of Rule 403. Id. at 5.

Defendant Grainey does not specifically respond to this motion; however, his response to Plaintiff's other motions implies that he opposes this one. See (Doc. 97 ¶ 1). Defendants Blaker and King have responded explicitly in opposition to this motion. See (Doc 104).

Unlike evidence regarding his criminal conviction and institutional history, Plaintiff's behavior on the bus on June 24, 2008, is not so remote in time to the use of force to be irrelevant. Indeed, as Defendants Blaker and King argue, Plaintiff's actions on the bus are relevant to demonstrate his state of mind. It further is relevant to whether Defendant King reasonably perceived that Plaintiff posed a threat to officer safety, or whether his use of force was motivated

---

[7] Defendants Blaker and King are reminded that this trial is scheduled to be completed within three business days, and that they must carefully review their witness lists and determine which witnesses truly are necessary for trial. See (Doc. 81 ¶ 1).

by a malicious and sadistic desire to teach Plaintiff a lesson for his unruly behavior.[8] It also, as these Defendants properly note, explains why Plaintiff was so extensively restrained.

With respect to Plaintiff's argument of unfair prejudice and the possibility of confusion, the undersigned does not find a significant risk of either. While Plaintiff's behavior on the bus certainly does not paint him in a favorable light, any prejudice that he would suffer as a result of its presentation to the jury would hardly be unfair. Plaintiff's actions are probative of his apparent agitated state leading up to his removal from the bus, and are relevant to Defendants' reasonable perception of the threat (or lack thereof) that he posed to their safety, which is the crux of this case. Any potential prejudice stemming from his apparent copious use of racial epithets may be limited by an appropriate jury instruction. Furthermore, rather than obfuscating, Plaintiff's behavior on the bus actually clarifies certain issues for the jury – such as why Plaintiff was so thoroughly restrained. Accordingly, Plaintiff's motion will be denied.

However, to the extent that Plaintiff argues that the number of witnesses proffered by Defendants regarding Plaintiff's conduct on the bus is unnecessarily cumulative, (Doc. 94 at 7), this denial will be without prejudice to Plaintiff reasserting it at the time of trial, if circumstances warrant doing so. See footnote 7.

D.   **Defendant Grainey's Motion *in Limine***

Defendant Grainey's motion *limine* seeks the following relief. First, Defendant Grainey moves that Defendant King's direct testimony regarding statements allegedly made to him by Defendant Grainey be excluded as hearsay. (Doc. 93 at 2). However, as Defendant Grainey

---

[8] The same is true for Plaintiff's use of racial epithets on the bus – especially in light of the fact that some of those epithets appear to have been directed at Defendant King. See (Doc. 94-1 at 9).

recognizes, the admissibility of the subject matter of this motion already has been ruled upon by this Court. Id. at 3. As such, Defendant Grainey explicitly states that he makes this motion only to preserve the issue for appeal. Id. at 3-4. Accordingly, this portion of his motion will be denied.

Next, Defendant Grainey moves that the projected testimony of Lieutenant Eperjesi ("Eperjesi") regarding statements allegedly made by Defendant King to him be excluded as hearsay. This testimony is expected to include that Defendant Grainey allegedly told Defendant King to "take care of business" as well as Defendant King's own statement that he "knew what he was told to do[.]" (Doc. 65-1 at 7-8, 18, 20-22); (Doc. 72 at 8 and 10). Plaintiff responds that Eperjesi's projected testimony is admissible under Rules 801(c)(2), 801(d)(2)(A), 803(1), 805, and 801(d)(2)(E) of the Federal Rules of Evidence. (Doc. 98 at 2).

Excluded from the definition of hearsay is an admission offered against an opposing party that "was made by the party in an individual or representative capacity[.]" Fed. R. Evid. 801(d)(2)(A). Another is a statement offered against an opposing party that was made "by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). An example of an exception to the prohibition of hearsay evidence, which is invoked by Plaintiff in his response, is a witness's statement regarding his then-existing mental, emotional, or physical condition, which is defined as

> [a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Fed. R. Evid. 803(3). In cases where multiple layers of hearsay apply to a statement, it need not be excluded "if each part of the combined statement conforms with an exception to the rule." Fed. R. Evid. 805.

Eperjesi's projected testimony can be divided into two categories. The first is the relation to statements made by Defendant King which, in turn, relate statements allegedly made by Defendant Grainey. The sole example of this in Eperjesi's deposition testimony is that Defendant King told him that Defendant Grainey had instructed Defendant King "to take care of business" with respect to removing Plaintiff from the prison transport bus. See, e.g., (Doc. 98-1 at 6). The second statement, in which Defendant King told Eperjesi that "I know what I was told to do[,]" (Doc. 98-1 at 6), relates Defendant King's own statement.

Plaintiff's arguments are unpersuasive, save one.[9] Under Rule 801(d)(2)(A), admissions are admissible when offered against the party who made them. As such, Plaintiff may use the content of these statements against Defendant King at trial. These statements are inadmissible against Defendants Blaker and Grainey.

E. **Defendant Blaker and King's Motion to Exclude Evidence of Officer Discipline and Misconduct**

Finally, Defendants Blaker and King seek to preclude any mention of

> any current and prior disciplinary actions , prior offenses any
> misconducts [involving themselves] . . . specifically including:

---

[9] Plaintiff's arguments fail because these statements (1) contrary to Plaintiff's assertion, are *only* relevant to demonstrate the truth of the matter asserted and, therefore, are hearsay; (2) were not made contemporaneously with the mental state at issue and, therefore, do not fall within the ambit of Rule 803(3); and (3) except as discussed above, are not admissible under Rule 801(d)(2)(A) because admissions may be used only against the party who made them.

> i. [Defendant] King's twenty-day suspension dated October 6, 2008 and [Defendant] Blaker's three-day suspension dated August 28, 2008;
> ii. The January 14, 2009 letter (and related disciplinary documents) detailing the results of the Office of Professional Responsibility investigation of Defendants concerning the June 24, 2008 incident; and
> iii. Plaintiff Delker's Inmate Grievance concerning the June 24, 2008 incident, dated July 10, 2008 and time-stamped July 14, 2008.

(Doc. 95 at 2-3). These Defendants argue that this evidence is impermissible under Rule 401, 402, 403, and 404(b) of the Federal Rules if Evidence. Id. ¶¶ 4-5. With respect to documents related to these Defendants' disciplinary proceedings, they argue that they should be excluded pursuant to Rule 407 as subsequent remedial measures as well. Id. at 5.

Plaintiff responds that he does not intend to introduce testimony regarding Defendant Blaker's disciplinary history, nor does he intend to introduce "sanctions or measures taken by the [D]epartment [of Corrections] in relation to prior disciplinary actions against Defendants Blaker or King." (Doc. 99 at 1 n.2). However, he asserts that Defendant King's disciplinary history is relevant to his conspiracy claim against Defendant Grainey. Specifically, he argues that, at the time of their conversation prior to the use of force, Defendant Grainey knew of Defendant King's disciplinary history, and this knowledge played a role in his alleged intent to conspire with Defendant King to violate Plaintiff's constitutional rights.

Any discipline received by Defendants Blaker and King for violating DOC policy on June 24, 2008, is of limited probative value. Simply put, the policies of the Department of Corrections and the Eighth Amendment are not the same, and as such, conclusions drawn by whatever body adjudicated Defendants' culpability with regard to their involvement in the June 24, 2008, incident do little more than obscure the issues. Furthermore, the parties' pretrial

statements indicate that they are prepared to produce ample evidence at trial, from which a jury may determine whether Defendants Blaker and/or King acted in a manner that comported with their training.

Additionally, there is a significant risk that, upon learning that the DOC disciplined Defendant King for his use of force on Plaintiff on June 24, 2008, and both Defendants Blaker and King for their actions subsequent to the incident, a jury would substitute the Department's determination of facts, and its conclusion of Defendants' culpability, for their own.[10] Accordingly, it is clear that Rule 403 precludes the admission of the findings of the DOC regarding the use of force against Plaintiff on June 24, 2008 – and the disciplinary sanctions imposed against Defendants Blaker and King – as direct evidence of their culpability in this matter.

However, Defendants Blaker and King indicate their intention to present evidence that their use of force was in compliance with DOC policy – and thus that various aspects of the Whitley test weigh in their favor. The probative value of the DOC's finding that Defendant King had violated policy with respect to his use of force on Plaintiff dramatically increases when it is used as to impeach that assertion, to the point that it outweighs any unfair prejudice that may go along with it. As such, Rule 403 would not preclude evidence that Defendant King violated the DOC's use of force policy with respect to Plaintiff – and was disciplined for the same – if it is used to impeach his assertion that he acted in conformity with that policy.

---

[10] This reasoning is applicable to the DOC's conclusion that Defendants Blaker and King presented versions of events that "were not completely truthful" as well. See (Doc. 99-1 at 9). It does not, however, apply to the underlying statements made by these Defendants regarding the incident.

Next, Defendants Blaker and King argue that their disciplinary histories, and Plaintiff's inmate grievance regarding their use of force, are inadmissible under Rule 407 as subsequent remedial measures. This argument is unpersuasive. Rule 407 does not prohibit the admission of remedial measures taken by nonparties. Diehl v. Blaw-Knox, 360 F.3d 426, 430 (3d Cir. 2004). Here, to the extent that Defendants' disciplinary histories and Plaintiff's grievance can be characterized as "subsequent remedial measures," they were taken by the DOC, and through them, the Commonwealth of Pennsylvania. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). It is undisputed that neither of these entities is a party to this suit, and no party is named in his official capacity. See (Doc. 35 ¶¶ 5-9) (naming Defendants explicitly in their individual capacities).

Next, Defendants Blaker and King seek to preclude the admission of Defendant King's disciplinary history, prior to the use of force on Plaintiff under Rule 404(b) as an impermissible use of character evidence. Plaintiff responds that he would use this evidence, which he asserts was known to Defendant Grainey on June 24, 2008, only to show Defendant Grainey's intent to enter into an agreement with Defendant King to assault Plaintiff. (Doc. 99 at 2-3). Taken to its logical conclusion, Plaintiff's argument is that Defendant Grainey's alleged knowledge of Defendant King's prior bad acts led him to believe that Defendant King would be more likely to enter into an agreement to assault Plaintiff.

Rule 404 of the Federal Rules of Evidence prohibits the use of evidence of prior wrongs "to prove a person's character in order to show that on a particular occasion the person acted with the character." Fed. R. Evid. 404(b). However, such evidence may be used for other purposes, such as proving "motive, opportunity, intent, preparation, plan, knowledge, [*et cetera*.]" Id. The courts of the Third Circuit apply a four-part test to determine whether prior

13

bad acts are admissible under Rule 404(b).  This test requires: "(1) a proper evidentiary purpose; (2) relevance under [Federal Rule of Evidence] 402; (3) a weighing of the probative value of the evidence against its prejudicial effect under [Rule] 403; and (4) a limiting instruction concerning the purpose for which the evidence may be used." United States v. Mastrangelo, 172 F.3d 288, 295 (3d Cir. 1999).  Additionally, "'when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that the [party] has the propensity to commit the [act] charged.'" United States v. Lindsay, 339 F. App'x 468, 272 (3d Cir. 2009) (quoting United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994)).

      Here, assuming, *arguendo*, that Defendant King's disciplinary history prior to the June 24, 2008 use of force is at least tangentially relevant to Defendant Grainey's state of mind when they allegedly entered into their conspiracy, whatever probative value it has to Plaintiff's conspiracy claim is vastly outweighed by the risk that the jury will interpret this evidence as an indication the Defendant King possesses the character necessary to assault inmates and, therefore, acted in accordance with that character at Defendant Grainey's suggestion.  It defies logic to accept Plaintiff's argument that Defendant Grainey believed that Defendant King was more likely to assault Plaintiff because of his prior bad acts, and not expect the jury to believe it as well.  Furthermore, while well-crafted jury instructions might diminish this risk somewhat, it is impossible to ignore that a significant link in the logical chain of Plaintiff's argument consists of Defendant King's propensity to act in accordance with his prior bad acts.  Accordingly, this Court concludes that Defendant King's disciplinary record relating to events other than the use of force on June 24, 2008, is inadmissible under Rule 404.

Finally, Defendants Blaker and King argue that the admission at trial of their disciplinary records – including the statements that these Defendants made in connection with the investigation leading to their discipline – will somehow violate their rights under the Fourteenth Amendment.  They cite to no case law supporting this assertion in the context of civil litigation, and this Court has been unable to locate any in its independent research.

AND NOW, this 1st day of March, 2012,

IT IS HEREBY ORDERED that Plaintiff's motion *in limine* to exclude irrelevant and prejudicial evidence related to Plaintiff's criminal and institutional history (Doc. 87) is GRANTED in part, and DENIED without prejudice in part.

IT IS FURTHER ORDERED that Plaintiff's motion *in limine* to exclude testimony of defensive tactics training witnesses and exhibits (Doc. 89) is GRANTED in part, DENIED in part, and DENIED without prejudice in part.

IT IS FURTHER ORDERED that Plaintiff's motion *in limine* to exclude testimony and exhibits pertaining to Plaintiff's Delker's conduct during the transport from SCI Somerset to SCI Greene (Doc. 91) is DENIED in part, and DENIED without prejudice in part.

IT IS FURTHER ORDERED that Defendant Grainey's motion *in limine* (Doc. 93) is GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Defendants Blaker and King's motion *in limine* (Doc. 95) is GRANTED in part, and DENIED in part.

BY THE COURT:


<u>s/Cathy Bissoon</u>
CATHY BISSOON
UNITED STATES DISTRICT JUDGE


cc (via CM/ECF):
All counsel of record